Owen, J.
On December 29, 1883, H. N. Whitbeck, treasurer of Cuyahoga county, commenced an action against William Butzman and Jacob Mueller, to obtain an order for the sale of premises in Cleveland, owned by Mueller, to satisfy an assessment of $200, with 20 per cent, penalty thereon for non-payment, levied pursuant to the act of April 17, 1883, better known as the Scott law (80 O. L. 164), which assessment was upon the business of Butzman as a dealer in intoxicating liquors on the premises, for one year ending on the second Monday of April 1884. Butzman has occupied the premises since April 20, 1883, as the tenant of Mueller, and with his consent that the business should' be carried on upon the premises. The petition also contains two supposed causes of action and a prayer for personal judgment against Butzman. The demurrers of Butzman and Mueller were overruled and judgment was rendered against Butzman as prayed, and an *224 order was made that in default of payment of the judgment within ten days the premises should be sold to satisfy the same. The district court dismissed a petition in error to reverse the judgment, and Butzman and Mueller prosecute this petition in error to reverse the order of dismissal and also the judgment and order of the court of common pleas.
The act in question provides: “ Section 1. That upon the business of trafficking in intoxicating liquors there shall be assessed, yearly, and shall be paid into the county treasury, by every person engaged therein the sum of $200.”
If the traffic is exclusively in malt and vinous liquors the assessment is but $100. Section 2 provides: “ That said assessments, together with any increase thereof, as penalty thereon, shall attach and operate as a lien upon the real property on and in which such business is conducted. . . . and that whoever shall engage or continue in the business aforesaid of selling intoxicating liquors in or upon land or premises not owned by him, and without the written consent of the owner thereof, shall be held guilty of a misdemeanor,” and liable to be fined or imprisoned or both; and each day’s continuance upon such premises shall be an additional offense.
Section 5 provides: “ That the county treasurer shall collect and receipt for all assessments so returned to him. And if any assessment shall not be paid when due, he shall forthwith proceed as provided by section one thousand one hundred and four (1104) of the Revised Statutes, to enforce the lien for the same and penalty ; and the provisions of said section -and any other provisions of the law of this state relative to the collection of taxes or assessments are hereby made applicable to the enforcement of such liens and the collection of such assessments and penalties. . .”
Section 1104 of the Revised Statutes' above referred to, provides that, the treasurer, in addition to all other-remedies provided by law, may enforce the lien for such taxes and assessments by a civil action in his own name as treasurer, for the sale of the premises, in the court of common pleas in the same way as mortgage liens are enforced. This section provides that judgment shall be rendered for the taxes or assess *225 ment, penalty and costs, and that the premises shall he sold to pay the same, &c. The proceeding below was clearly under this section and for the sale of Mueller’s property to pay an alleged debt of Butzman. If Butzman was a proper party it was merely with reference to the amount due, and possibly his interest as lessee in the premises, and a careful examination of the provisions of section 11C4, makes it clear that no personal judgment against Butzman was authorized in such action, whatever remedies the treasurer may have under other provisions of the statute.
The treasurer evidently obeyed the direction of section 5 to “ proceed forthwith as provided by section 1104 of the Revised Statute to enforce tht lien for the same and penalty.”
While section 1104 provides for a judgment, that a judgment against any other party than the owner of the land is not contemplated is apparent from this language : “ and the owner or owners of such property shall not be entitled to any exemption as against such judgment.”
The proceeding is plainly stamped as one to effectuate the lien for the assessment.
If, therefore, no lien attached to the property of Mueller, the proceeding must fall.
The act in question assumes to attach a lien for the assessments and penalties upon the premises, whereon the traffic in liquors is prosecuted, without regard to the question whether the person so engaged is owner or tenant; and then the act further provides (section 2) that “whoever shall engage or continue in the business aforesaid of selling intoxicating liquors in or upon land or premises not owned by him, and without the written consent of the owner thereof shall be held guilty of a misdemeanor, and each days continuance is made an additional offense.
Does this provision authorize a license and therefore contravene the first clause of the 18th section of the schedule to the constitution which ordains that: “No license to traffic in intoxicating liquors shall hereafter be granted in this state; but the general assembly may by law provide against evils resulting therefrom.”
*226 It has been assumed by counsel that this question has been adjudicated by this court in the cases of State v. Frame and Fenner v. Bauder, 39 Ohio St. 398, known as the Scott law cases, and that we are called upon either to approve or overrule those cases. It will be seen that the question involved in these eases was simply whether the Scott law, so far as it authorized assessments upon the business of trafficking in intoxicating liquors was a valid and constitutional enactment, with perhaps the other incidental question, whether section 2 could be stricken from the act and leave it capable of enforcement according to the legislative intent. The question of lien or license was not necessarily involved in either case. After holding the assessment features valid and that the act could be enforced without the penalty clause of the second section, the opinion proceeds:
“ Upon this view, further consideration of this question might be, with propriety, omitted from .this opinion, as the cases before us do not depend upon the validity or invalidity of the second section of the statute.
“ But inasmuch as the validity of this clause of the statute has been fully and ably discussed by counsel, and a large number of the citizens of the state are personally interested in the question, I have concluded to state the views entertained by a majority of the court, after full consideration.”
There is nothing in the present case which calls upon us to reconsider either of the questions, actually before the court and adjudicated in those cases. So much of the opinion as follows the above quotation, being that of. a majority of the eminent judges who composed this court at that time, comes to us with much force and weight, and is entitled to that high consideration and respect which is freely accorded it by the writer of the present opinion. But being an opinion upon questions not necessary to a determination of the cases then under consideration, its examination by this court is comparatively free from the embarrassment and delicacy which must attend a reconsideration of a question necessarily adjudicated by the court.
Not unmindful of the grave responsibility assumed in con *227 sidering the validity of a legislative enactment, and fully aware that only a fixed conviction after the fullest consideration, and that, beyond every substantial doubt, will justify this court in declaring such an act unconstitutional, we proceed to inquire : 1. Does the penal clause of section 2, which declares it a misdemeanor to engage in the liquor traffic upon the premises of another without the written consent of the owner, authorize a license to traffic in intoxicating liquors? Fortunately, the field of inquiry is narrowed by the previous discussions of the license question by the members of this court, and by the court itself. In the State v. Hipp, 38 Ohio St. 199. (the Pond Law case), license, in a general sense was said to be “ permission granted by competent authority to do an act which without such permission would be illegal.” In the Frame case, Mellvaine, J. says : “A license is essentially the granting of a special privilege to one or more persons, not enjojmd by citizens generally, or, at least not enjoyed by a class of citizens to which the licensee belongs.” Cooley, J., in Youngblood v. Sexton, 32 Mich. 419, says : “ The popular understanding of the word license undoubtedly is, a permission to do something which without the license would not be allow, able. This we are to suppose was the sense in which it was made use of in the constitution. But this is also the legal meaning.”
Applying these definitions of a license to the Scott law the opinion in the Frame case proceeds : “No citizen or class of citizens is required by this statute to perform any condition before the right to traffic shall vest in him.”
Let us see. This act found three classes of traffickers in intoxicating liquors. (1) Those who prosecuted the traffic upon their own premises; (2) the class of dealers who carry on the traffic upon the numerous watercrafts floating upon the waters within the jurisdiction of the courts of the state; and (3) those who carry on the traffic upon lands owned by others.
Just how numerous the latter class may be we may not know. We see, however, that they were sufficiently numerous to justify the general assembly, in its wisdom, in making them the subject of special legislation.
*228 We can suppose that when this law took effect, very few of them were equipped with what legalized their business— tlxe written consent of the owners of the premises occupied. As to all of this class who were not thus supplied, the act was a prohibitory law. Their business was illegalized, and severe penalties were denounced against it; and each day’s continuance of the traffic scored against them a distinct offense. The law prescribed just one condition upon which their traffic could be rendered as lawful as that of those against whom no penalties were denounced, and upon whom no conditions were imposed. It said to the dealer upon another’s premises: Procure the written consent of the owner of the lands you occupy or bow to the penalties denounced against you. .Without such writing the dealer is a criminal. Armed with it, and his business (if he avoid the special offense defined in the act) is as lawful as the traffic in dry goods. But eminent counsel contend that the offense here created is that of occupying the premises of another without his written consent. This argument is conclusively answered by the language of the act itself: “ Whoever shall engage or continue in the business aforesaid of selling intoxicating liquors in or upon land or premises not owned by him, and without the written consent of the owner thereof, shall be held guilty of a misdemeanor.”
Counsel' illustrate this argument by asking us to suppose that our statutes had provided that whoever shall carry on the business of bread-making or brick-making upon the lands of another without his written consent shall be held guilty of a misdemeanor, and an imposing array of eminent counsel submit this test as decisive of this question. But to keep the analogy good, we are to supplement the illustration with the further supposition that the constitutional convention had been foolish enough to submit, and the people thoughtless enough to adopt, a provision ordaining that: “No license to carry on the business of brick-making or bread-making shall be granted in this state; .but the general assembly may, by law, provide against evils resulting therefrom.”
With the analogy complete the argument fails. In the *229 opinion of the majority in State v. Frame, this argument is urged:
“We think this statute is no more a license law than was section two of the liquor law of 1854, which provided, ‘ That it shall be unlawful for any person or persons, by agent or otherwise, to sell intoxicating liquors to minors, unless upon the written order of their parents, guardians, or family physician.’ Surely, it cannot be contended that that section granted a license to traffic in intoxicating liquors with minors.”
With great respect it is submitted that this argument is conclusively answered in the dissenting opinion in that case, as follows:
“ The difference is very marked. The requirement that a sale could only be made to a minor on such order was a mere regulation, which left in the dealer the right to traffic in liquors; but one who- is not the owner of real estate is absolutely prohibited from dealing in liquors in any way, without the written consent of the owner of the property in which he proposes to carry on the business. There is no analogy between the cases.”
It may be added that upon the slightest reflection, it will be seen that to keep the analogy good the argument must assume that a doctors .or parents’ written order for liquor for a minor, addressed to a liquor dealer, is a written consent to carry on the business of trafficking in intoxicating liquors; for this is what the “ written consent of the owner ” contemplates.
But it is maintained that the definition of license contemplates that it shall be issued by authority, whereas the written consent provided for in this act is a mere private permit. Such a construction requires that we utterly ignore the operation and effect of the act and regard only its form and letter. It is settled in State v. Hipp, that the constitutionality of a statute depends upon its operation and effect, and not upon the form it may be made to assume. Upon this subject, it was said by White, C. J. in the District Court Cases, 34 Ohio St. 431: “ An act violating the true intent and meaning of the constitution, although it may not be within the letter, is as much within the purview and effect of a prohibition as if *230 within the strict letter ; and an act in evasion of the terms of the constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in terms forbidden:” The act provides that whoever engages in the liquor traffic upon premises not owned by him, and without the written consent of the owner tlierof shall be guilty of a misdemeanor, &c.
Stripped of the weak disguise with which a cunning phrase has invested it, this provision plainly confides to the owner the authority to say whether the dealer occupying his premises shall stand as a criminal before the law, or whether his business shall be entirely lawful. Suppose the act had provided that: “ Whoever shall engage in the liquor traffic upon premises not owned by him without the written permission of the probate judge of his county, who is hereby authorized, in his discretion, to grant such permission, shall be guilty of a misdemeanor,” &c. Would the judge be in a more emphatic sense clothed with authority to issue such permission than the owner now is? Is the owner any the less authorized to legalize the business of his tenant than if he were a public officer? And is not this authority derived from, the state through this act ? If the tenant be put upon his trial for a violation of this provision is not his acquittal as abundantly assured by exhibiting the written consent of the owner as if it bore the seal of a commissioned, sworn and salaried officer ?
The Pond law said to the dealer : Procure a bond signed by two sureties or stand condemned before the law. The Scott law says to the dealer upon anothers premises : Procure the written consent of the owner of your place of business or suffer the penalties denounced against you. Nor does the analogy fail because the tax is not the price of the license.
“ There is no necessary connection between them. A business may be licensed and yet not taxed, or it may be taxed and yet not licensed.” Per Cooley, J., in Youngblood v. Sexton, 32 Mich. 425.
The state has plainly invested the owner with the vast discretion of determining whether the dealer upon his premises *231 shall prosecute bis business as a lawful traffic, or whether he shall remain under the condemnation of the law ; and to say that this is a mere private permit — that there is no element of public authority in it, is to allow a principle of government which the people have ordained as a feature of their organic law to be subverted by mere subterfuge. If the dealer fails to procure the written license of the only person anthorized to issue it, the owner, he continues a daily transgressor against the law. If he procure it, his business is as lawful as that of the dealer who owns his business place, or the dealer upon a watercraft against whom neither penalties nor lien are provided ; for, “said assessment shall attach and operate as a lien upon the real •property on, and in which such business is conducted.” Here is discrimination between classes. Here, under the definition of license in State v. Hipp, is -permission granted by authority to do an act which without such permission would be illegal. Here, by the definition of license in State v. Frame, is “ The granting of a special privilege to one or more persons .... not enjoyed by a class of citizens to which the licensee belongs.”
Does not this act clearly and negatively answer the proposition that, “No citizen or class of citizens is required by this statute to perform any condition before the right to so traffic shall vest in him ?”
The “ condition ” required in the Pond law wras to procure a bond. The “ condition ” required by the Scott law is to procure the written consent from the owner. The failure to comply with either condition alike invoked the penalties of fine or imprisonment or both.
Whether this provision was intended to cause the lien to attach, or to protect the owner by enabling him to invoke its penalties against the tenant, avc need not say. This provision and that concerning the lien upon the owner’s premises of the assessment against the business of the tenant, so depend upon each other in the general scheme and purpose of section 2, that both are involved in a common infirmity and must fall together.
These provisions, in our opinion, upon the authority of State *232 v. Hipp, constituted the act a license law, so far as the act attempts to secure a lien upon real estate occupied bj tenants, whether the lease be executed before or after the passage of the act; and the provisions being unconstitutional it is obviously immaterial whether the owner has or has not consented either verbally or in writing, to the prosecution of the traffic.
We are prompted by considerations which seem urgent, to confine our discussions and determination to the questions necessary to a disposition of the case before us. Upon a well established principle, it is the duty of this court, if there is other clear ground upon which to rest its judgment, to leave the question of the constitutionality of a legislative enactment for consideration until a case arises which cannot be disposed of, without considering it, and when a decision upon such question will be unavoidable. Cooley’s Const. Lim. 199 ; Ireland v. Turnpike Co., 19 Ohio. St. 373. Stability of judicial decision of a court of last resort upon all questions, especially upon questions of great public concern, is one of the safeguards of popular government. It is essential to such stability that the questions determined here are those actually before ns and necessary to the determination of the case under consideration.
Whether the Scott law is in any other respect unconstitutional and how far the rule of stare decisis, should control are questions not presented by the record in this case, and therefore they are not decided.

Judgment reversed and action dismissed.

JOHNSON, C. J.
For reasons given in former cases involving the same question, I do not assent to the second point of the syllabus, which in substance, holds that the written consent of the landlord to his tenant to engage in the traffic in intoxicating liquors on his property, given after the act in question took effect, is a license.
The re-arguments of this question, and further reflection have confirmed the views heretofore expressed, as to the legal signification of the 18th section of the schedule.
*233 I also dissent from the statement in the 3d point of the syllabus, to the effect that the validity of the “ other provisions,” of the Scott law, “ is a question not presented by the record.”
This is a question of fact, rather than of law, to be determined by an inspection of the record.
Learned counsel who represented the plaintiffs in error, in oral as well as written argument made no such claim. They asked us to review the decision of the common pleas and district courts, which, following this court had held, these “ other provisions,” were valid. For that purpose we allowed a petition in error to be filed and upon that single question the case was ably argued at great length, but the majority have sua sponte, disposed of the case on the ground that the question is not made in the record.
That this position is untenable will appear from a statement of the issues presented by the pleadings. It will be seen by an inspection of this record, that the validity of the first section of the law, as well as the landlord clause of the second section, was directly involved, and that there was no way of avoiding a decision of it. The petition contains two causes of action: th e first, against Butzman, to recover a, personal judgment for the tax and penalty under section 1 of the act; the second, against Butzman as tenant and Mueller as landlord, to enforce a specific lien created by statute on the premises owned by Mueller, and to sell the same to pay such judgment. In view of this fact, the statement that this is an action to enforce the lien merely, is a clear misapprehension of the pleadings.
In the-first cause of action, after stating the facts constituting a personal liability of Butzman under section 1, for the tax and penalty, it concludes as follows:
“ Wherefore he (the plaintiff), prays judgment against said William Butzman for the sum of $240.”
Standing alone, this would have been a civil action under Revised Statutes, § 2859 to recover a personal judgment, on which execution could issue.
The second cause of action is to enforce against the real *234 estate, the lien authorized by section 2 of the act. Its allegations are against Mueller as landlord, and Butzman as tenant. If this clause is valid, it is conceded these allegations are sufficient to entitle the plaintiff to a decree for the sale of the property.
The prayer to this cause of action is :
“ Wherefore this plaintiff prays for a judgment against said defendant, William Butzman, for the sum of $240, that the court may take an account of the amount of assessments with the penalties thereon against said real estate, and declare the same a lien thereon, and order such real estate sold for the payment of said assessments and penalties and the costs of this action, and for such other and further relief as he is entitled to by reason of the premises.”
The defendants, Butzman and Mueller filed separate demurrers — that of Butzman alleging that the petition did not state a cause of action against him, and that of Mueller, that as to him, there was no cause of action, that is no ground to enforce a lien on his property.
These demurrers were separately submitted to the court, and separately decided. Thereupon, on submission and proof, a personal judgment was rendered against Butzman for the assessment and penalty, $240, and a decree for the sale of the real estate to pay the same, was entered on the second cause of action.
This judgment and order of sale were affirmed by the district court, that court holding, that neither of these demurrers was well taken.
This statement taken from the record clearly shows that two distinct questions of law were before the courts below and are now before us for review, namely; was there a good cause of action against Butzman for a personal judgment and second, was there a good cause of action to enforce the lien against the property of Mueller 1
Either cause of action might have been brought without joining the other. Mueller’s demurrer would be well taken if the opinion of the majority be correct and a good cause of action would still remain against Butzman. The decision of *235 the majority holding that the lien cannot bo enforced disposes of the second cause of action against the property but leaves the first cause of action undisposed of. That this is so, is too apparent to admit of question. The statement therefore that there is practically one cause of action and that to enforce the lien merely is manifestly at variance with the record.
But it may be claimed that these two causes of action cannot be united in a single petition; and it is claimed, erroneously as we have shown, that this is merely a proceeding to enforce a lien. That neither of these grounds is tenable will appear from a summary statement of the statutes on the subject.
Section 1 of the Scott law, assesses upon the business of trafficking in intoxicating liquors, a specific sum of money yearly, which “ shall be paid by every person engaged therein.” This created a statutory liability against Butzman wholly independent of the second section of said act.
Section 2 provides that said assessment, &e. shall attach and operate as a lien on the real property on which said business is conducted. By the latter clause of said section it is made a misdemeanor for one to engage in such business on land owned by another without his written consent. Section 3 provides for a return by the assessors of the places where such business 'is carried on.
Section 4 makes it the duty of the county auditors to make out a duplicate of such assessments and to deliver the same to the county treasurers, for collection.
Section 5 specifically provides for the collection of these assessments.
If they are not paid by the persons carrying on the business when due the treasurer shall forthwith proceed as provided by Rev. Stats. § 1104. “ To enforce the lien for the same and penalty and the provisions of said section, and any other provisions of the law of this state relative to the collection of taxes or assessments are hereby made applicable to the enforcement of such liens and the collection of such assessments and penalties.”
It is thus made clear by this section that the treasurer is not only clothed wdth power to enforce the lien but is further *236 invested with power to resort to “ any other provisions of law, relative to the collection of taxes and assessments.” By section 1104: the treasurer “in addition to all other remedies provided by law,” may enforce by civil action the lien for taxes “ in the same way as mortgaged liens are enforced.”
Among the “ other remedies provided by law,” are to be found the general provision for the collection of taxes. Revised Statutes, §§ 2838 to 2863.
Section 2859 provides “in addition to other remedies provided by law” for the collection oí personal taxes, for a cvoil action. This action is to be brought in the name of the treasurer against the person whose duty it is to pay;
A personal judgment may be rendered against him, and he shall riot be entitled to the benefit of the laws for the stay of execution or exemption of homestead, or any other property from levy or sale or execution in the enforcement of any such judgment, By section 2860, the term personal taxes includes all taxes “ except only tax on real estate as such.”
This provision of law authorizing a civil action arid a personal judgment, has, inadvertently as we suppose, been overlooked by the majority, or else it has been wholly ignored.
Upon this section, 2859, rests the first cause of action against Butzman for a personal judgment.
The second cause of action to enforce the lien against the property, is founded upon provisions contained in section 1104. The right to join these separate causes of action is clearly authorized by section 5021 Revised Statutes.
Section 1104 authorizes the enforcement of the statutory lieu of taxes and assessments on real estate “in the same way as mortgaged liens are enforced.” Section 5021 provides that “ in an action to foreclose a mortgage given to secure the payment of money, or to enforce a specific lien for money, the plaintiff may also ask in his petition for a judgment for the money claimed to be due; and such proceedings shall be had thereon, as in a civil action for the recovery of money only.”
The plaintiff is strictly within the terms of these several statutes. Under section 2859 he has a civil action for money only *237 on which he is entitled to a personal judgment. JBy section 1104, he has an action in equity to enforce a specific lien on real estate. By section 5021, plaintiff may ask for a personal judgment as well as for the enforcement of the specific lien, “ and such proceedings shall be had as if it were a civil action for money only.”
If therefore it be assumed that the action to enforce the specific lien fails by reason of the invalidity of the last clause of section 2, the first cause of action against Butzman stands untouched and unaffected.
This presents for the consideration of this court the validity “ of the other provisions,” of the Scott law.
If it be claimeql these two causes of action cannot be joined in a single petition, inasmuch as they each do not affect all the parties to the action the reply is that that question is res adjudicata. That was, perhaps, the law prior to the amendment of the code in 1864, which is now section 5021 R. S.
In McCarthy v. Garrahty, 10 Ohio St. 438, the court expressed a doubt of the joinder of two causes of action, one on a note and the other on a mortgage, but held that as no objection for misjoinder was made in the court below, it could not be taken advantage of in this court. In consequence of that doubt, the act of 1864 (now section 5021) was passed. Malcomb v. Marshall, 29 Ohio St. 616. Soon after this act was passed it received an authoritative construction by this court, which has ever since been followed.
In King v. Safford, 19 Ohio St. 587, it was held that “ the holder of a note secured by mortgage may in a single action demand arid have a judgment against all .the makers of the note, although the mortgage is- executed only by fart of the inakers of the note?
The fact, therefore, that one cause of action was against Butzman, and the other to enforce the lien against him and Mueller, is no ground for claiming a misjoinder since the act of 1864 ; nor was it prior to that act, where, as in this case, no objection was made to such joinder in the court below.
The validity of the first section of the Scott law was, therefore, directly involved in the first cause of action. The courts *238 below either erred, or they did not, in overruling .Butzman’s demurrer.
That the majority have doubts as to the correctness of their conclusion, is manifest from the final judgment rendered. If there was but a single cause of action, to enforce a lien, then as they held the lien invalid a judgment against plaintiff, should have been rendered, that would lar a future action.
Instead of such a judgment, the journal entry, after dismissing the action against both defandants adds : “ And it is ordered and adjudged that the action be and the same is hereby dismissed, lut without prejudice to the defendant in error to proceed against said Butzman in sxioh m anner as the law may warrant.”
This leaves the whole question as to the personal liability of Butzman open to future litigation.
We know of no reason why his liability to a personal judgment should not have been decided in this case.
Every consideration of public policy seems to have demanded that this vexed question so fairly made should be settled at the earliest practicable period. Such was the desire of both parties evidenced by their pleadings and arguments, and such appears to be in the plain path of judicial duty. These views are expressed with all proper respect for the majority.